UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DIGITONE INDUSTRIAL COMPANY, LTD., a foreign company,<br><br>         Plaintiff,<br><br>vs.<br><br>PHOENIX ACCESSORIES, INC., a Pennsylvania corporation; DAVE MAUSOLF; DOES I through V; ROE CORPORATIONS I through V, inclusive,<br><br>         Defendants. | Case No.: 2:08-cv-00404-RLH-RJJ<br><br>**O R D E R**<br><br>(Motion to Dismiss–#6) |

Before the Court is Defendants Phoenix Wireless, Inc. and Dave Masoulf's (collectively "Phoenix") **Motion to Dismiss** (#6), filed April 7, 2008. The Court has also considered Plaintiff Digitone Industrial Company, Ltd.'s ("Digitone") Opposition (#9), filed April 23, 2008, and Defendants' Reply (#10), filed May 7, 2008.

### BACKGROUND

Plaintiff alleges that Defendant Phoenix breached a contract by failing to pay for the purchase of Digitone's goods. On April 7, 2008, Phoenix filed the instant Motion to Dismiss under Fed. R. Civ. P. 12(b)(2), (3), and (6) seeking dismissal for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, respectively. Phoenix also argues that Digitone is barred from bringing suit in Nevada because it is a foreign corporation that failed to qualify to do business in Nevada pursuant to Nev. Rev. Stat. § 80.010 through § 80.040.

1

Digitone is a Taiwanese corporation doing business as a manufacturer and supplier of cell phone parts and accessories. Digitone never registered with the Nevada Secretary of State to do business in Nevada and has no known operations in Nevada. Digitone's only employee in Nevada, Berry Chen ("Chen"), is a Digitone representative, the ex-wife of Digitone's founder and principal, and Digitone's sole affiant.

Defendant Phoenix Wireless, Inc. ("Phoenix Wireless") is a Pennsylvania corporation doing business as a distributor of cell phone parts and accessories. Phoenix Wireless never registered to do business in Nevada, does not pay Nevada taxes, and has no offices or employees in Nevada. Defendant David Masoulf ("Mausolf") was the Chief Executive Officer of Phoenix Wireless and a Pennsylvania resident during all relevant times.

The relationship between Digitone and Phoenix began in 2000. Over the years, Digitone and Phoenix entered into contracts for the sale of Digitone's cell phone parts and accessories. After contracting with Digitone, Phoenix Wireless would purchase Digitone's products in Pennsylvania, direct the purchase orders to Digitone in Taiwan, and pay Digitone via a wire transfer from Pennsylvania to Taiwan. In turn, Digitone shipped its products from Taiwan to Pennsylvania.

From 2003 to 2008, Masoulf attended the annual Consumer Electronics Show ("CES") in Las Vegas, Nevada on behalf of Phoenix Wireless. Masoulf's trips to Nevada each year would last from four to ten days. At the CES, Masoulf would show Digitone representatives his booth displaying various Digitone products for sale. Masoulf and Chen would discuss outstanding invoices along with current and future contracts regarding the sale of Digitone products. However, Phoenix never entered into any agreements, contracts, or purchase orders with Digitone in Nevada. Additionally, Phoenix conducted business with numerous other companies while in Nevada.

/ / / /

/ / / /

1  In Las Vegas, Masoulf also met with Chen and her three children in restaurants and various other locations for non-business related matters. Each year, Masoulf went to Las Vegas stores and bought Chen and her family various gifts.

For the reasons stated below, the Court grants Phoenix's Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2). Accordingly, the Court does not address the 12(b)(3) and 12(b)(6) grounds for dismissal or Phoenix's argument that Digitone failed to qualify per Nev. Rev. Stat. § 80.010 through § 80.040.

**DISCUSSION**

**I.  Fed. R. Civ. P. 12(b)(2) Standard**

A court may dismiss a complaint for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing that the court has jurisdiction over each defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In the absence of an evidentiary hearing, the plaintiff must make a prima facie showing of personal jurisdiction to defeat a 12(b)(2) motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). To make a prima facie showing of jurisdiction, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.* The plaintiff's allegations "may not be merely conclusory, but must assert particular jurisdictional facts which establish the necessary ties between the defendant and the forum state." *Pocahontas First Corp. v. Venture Planning Group, Inc.,* 572 F. Supp. 503, 506 (D. Nev. 1983). Moreover, a court resolves conflicts in the parties' affidavits in favor of the non-moving party. *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 457 n.5 (9th Cir. 2007). However, for purposes of personal jurisdiction, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

/ / / /

/ / / /

AO 72
(Rev. 8/82)

1   In order to establish personal jurisdiction, the plaintiff must show that the forum's long-arm statute confers personal jurisdiction over the out-of-state defendant and that the exercise of jurisdiction does not violate federal constitutional principles of due process. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986). "Nevada's long-arm statute . . . reaches the limits of due process set by the United States Constitution." *Baker v. Eighth Judicial Dist. Court*, 999 P.2d 1020, 1023 (Nev. 2000); Nev. Rev. Stat. § 14.065(1). Therefore, the analyses for Nevada's long-arm statute and federal due process are the same. Due process requires that a defendant "have certain minimum contacts with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Due process is satisfied if the Court has general or specific jurisdiction over the defendant. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

**A.     General Jurisdiction Standard**

The exercise of general jurisdiction is appropriate only where the defendant's activities in the forum state are so "continuous and systematic" that it "approximates physical presence" in that state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). In addition, the exercise of general jurisdiction must be reasonable. *See Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852–853 (9th Cir. 1993). In *Helicopteros*, the Supreme Court held that the nonresident defendant's contacts with the state of Texas did not "constitute the kind of continuous and systematic general business contacts" necessary to establish general jurisdiction. 466 U.S. at 416. The *Helicopteros* defendant never registered to do business in Texas, never solicited any business in Texas, and maintained no records or offices in Texas. *Id.* However, the *Helicopteros* defendant purchased products costing more than $4 million from Texas, sent personnel to Texas for training and administration, and received over $5 million in payments drawn from a Texas bank. *Id.* at 411.

1    Here, the facts militate against a finding of general jurisdiction over Phoenix.  Like
2  the *Helicopteros* defendant, Phoenix did not register to do business in the forum state and
3  maintained no records or offices in the forum state.  Moreover, Phoenix's business contacts are
4  less continuous and systematic than the *Helicopteros* defendant's because there is no evidence that
5  Phoenix made significant business-related transactions in Nevada.  Also, whereas the *Helicopteros*
6  defendant would send multiple employees into Texas for training and administration, Phoenix sent
7  only one known employee into Nevada to attend a convention for four to ten days a year.

8    Digitone argues that Phoenix's yearly attendance at an industry convention
9  constitutes activity so "substantial" or "continuous and systematic" that "it approximates physical
10 presence in the state." *Bancroft*, 223 F.3d at 1086.  Digitone emphasizes that Phoenix should
11 expect to be sued in Nevada because they have been making these trips to Nevada for the past five
12 and a half years.  However, the attendance of trade shows is insufficient to give this Court general
13 jurisdiction over Phoenix.  *See Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242
14 (9th Cir. 1984) (no general jurisdiction existed where, among other things, the defendant attended
15 trade shows and sales meetings in the forum state).

16    Furthermore, Digitone fails to make a prima facie showing that Phoenix solicited
17 any business in Nevada.  Digitone makes conclusory allegations that Phoenix sold Digitone
18 products to convention attendees in Nevada and that Phoenix has "done business with numerous
19 other companies" in Nevada. (Dkt. #9, Opp'n, Ex. 1 (Chen Aff.) ¶ 5.)  However, without specific
20 jurisdictional facts as to the volume and nature of Phoenix's Nevada business transactions, these
21 allegations alone are insufficient to establish that Phoenix had continuous and systematic ties with
22 Nevada.

23    Digitone also does not request discovery or an evidentiary hearing on personal
24 jurisdiction.  Ordinarily, a court "should grant discovery regarding jurisdiction when the parties
25 dispute pertinent facts bearing on the question of jurisdiction or more facts are needed." *Pat Clark*
26 *Sports, Inc. v. Champion Trailers, Inc.*, 487 F. Supp. 2d 1172 (D. Nev. 2007).  The Court has

1  broad discretion with regard to the granting of discovery and will be reversed only where a denial

2  of discovery "results in actual and substantial prejudice to the complaining litigant." *Data Disc*,

3  557 F.2d at 1285 n.1.  A lack of discovery does not prejudice Digitone.  Digitone never indicated

4  that it desired discovery, and the Parties do not dispute pivotal facts bearing on the question of

5  jurisdiction.  Rather, Digitone simply fails to meet its burden of establishing a prima facie case of

6  personal jurisdiction against Phoenix.  *See Pebble Beach*, 453 F.3d at 1154; *see also Ballard*, 65

7  F.3d at 1498.  Therefore, Digitone has failed to demonstrate that this Court has general jurisdiction

8  over Phoenix.

### B.    Specific Jurisdiction Standard

Specific jurisdiction over a non-resident defendant is appropriate if a defendant's forum contacts create a substantial connection with the forum.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985).  The Ninth Circuit uses the following three-part test to determine the appropriateness of specific jurisdiction:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2) the claim must be one which arises out of or results from the defendant's forum-related activities [; and] (3) exercise of jurisdiction must be reasonable.

*Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997) (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  After the plaintiff has established the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would not be reasonable. *Id.*

#### 1.    Purposeful Availment

"Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986).  Purposeful availment requires that

1  the defendant exhibit some kind of affirmative conduct allowing or promoting business transactions
2  within the forum state. *Id.*  Thus, "the solicitation of business in the forum state that results in
3  business being transacted or contract negotiations will probably be considered purposeful
4  availment." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).  Likewise,
5  contract negotiations followed by contract formation in the forum state invoke the forum state's
6  benefits and protections and favor a finding of purposeful availment. *See Data Disc*, 557 F.2d at
7  1287–88.

8  Phoenix has not purposefully availed itself of the privilege of doing business in
9  Nevada.  Digitone alleges that Phoenix purposefully availed itself of Nevada's privileges and laws
10 because Mausolf rented a car, rented a CES booth, and attended the CES in Nevada on behalf of
11 Phoenix Wireless.  Mere rentals and attendance of an industry trade show do not necessarily mean
12 that the Parties bought or sold products at Phoenix's CES booth or that Phoenix solicited
13 Digitone's business.  Furthermore, although Phoenix displayed various Digitone products for sale
14 at the CES, Digitone does not state whether Phoenix actually sold any of the products or whether
15 Phoenix consummated the sales in Nevada. *See Sinatra*, 854 F.2d at 1195.  Similarly, Digitone
16 contends that Mausolf's dinner and gift-giving meetings with Chen and her children show that
17 Phoenix "purposefully availed" themselves of the protections of Nevada law.  But, Chen's
18 Affidavit states that these meetings were non-business related.  Hence, Phoenix has limited
19 contacts with Nevada that fail to rise to the level of purposeful availment.

20 Digitone also fails to make a prima facie showing that Phoenix availed itself of
21 Nevada's privileges and laws by soliciting business or negotiating contracts in Nevada.  Chen's
22 Affidavit for Digitone merely states that she "would discuss outstanding invoices along with
23 current and future contracts with Mausolf regarding the sale of Digitone products." (Chen Aff. ¶
24 2.)  Chen does not state whether any negotiated contracts were actually implemented or whether
25 Phoenix affirmatively promoted business transactions by playing the role of active negotiator rather
26 than passive listener to Chen's comments.  Hence, Digitone has not shown that Phoenix sought out

the discussions or possible contract negotiations. Phoenix's contacts with Nevada do not suggest an affirmative conduct allowing or promoting business transactions, *see Decker*, 805 F.2d at 840, so Digitone fails to satisfy the "purposeful availment" prong of the Ninth Circuit's test for personal jurisdiction.

### 2.    Arising Out of Forum-Related Activities

The Ninth Circuit applies a "but for" test to determine whether a particular claim arises out forum-related activities. *Ballard,* 65 F.3d at 1500. Digitone fails to make a prima facie showing that but for Phoenix's Nevada contacts, the breach of contract would not have arisen. The Parties did not enter into the contract at issue in Nevada. Although Digitone alleges in its Motion that the Parties entered into several contracts in Nevada, Phoenix provides affidavit evidence that no contracting between the Parties occurred in Nevada. Phoenix's version of the facts prevails, *see Alexander v. Circus Circus Enters.*, 972 F.2d 261, 262 (9th Cir. 1992), and therefore, Digitone cannot satisfy the "but for" test based on contracting in Nevada.

Digitone also makes an attenuated, unsupported argument that the breach of the contract would not have arisen but for Phoenix's attendance at the CES each year. Digitone fails to demonstrate that the initial formation of the Parties' business and social relationships arose out of the Parties' Nevada contacts. On the contrary, the Parties' business and social relationships began three years prior to Phoenix's trips to Las Vegas. Furthermore, Digitone fails to establish that the Parties negotiated or entered into any contracts in Nevada at the CES. Phoenix's affidavits show that the Parties exchanged neither money nor products within Nevada and that execution and performance of the contracts in question occurred wholly outside of Nevada. Consequently, Digitone has not established the significance of Phoenix's Nevada contacts in the formation and execution of the contracts in question. Digitone therefore fails to satisfy the "but for" prong of the Ninth Circuit test for personal jurisdiction, and the Court cannot exercise specific jurisdiction over Phoenix. Because Digitone did not meet its burden of satisfying the first two prongs of the Ninth Circuit's personal jurisdiction test, the Court does not address the reasonableness of specific

jurisdiction. *See Schwarzenegger*, 374 F.3d at 802.

### C. Personal Jurisdiction and the Fiduciary Shield Doctrine

The fiduciary shield doctrine resolves the issue of whether the Court may exercise personal jurisdiction over Mausolf individually. The fiduciary shield doctrine may prevent a court from exercising personal jurisdiction over an individual if he has contact with the forum state only by virtue of his acts as a fiduciary of a corporation. *See Pocahontas*, 572 F. Supp. at 508. The applicability of the fiduciary shield doctrine ultimately hinges on equity and generally depends on whether the employee faithfully pursued the corporation's interests rather than his own interests. *Id.*

The fiduciary shield doctrine shields Mausolf from the Court's exercise of jurisdiction over him because he only came to Nevada to pursue business interests on behalf of Phoenix Wireless. Digitone claims that Mausolf pursued his own interests in Nevada, holding non-business meetings with Chen and her family. However, none of Digitone's seven claims for relief arise out of these non-business visits with Chen's family. All seven claims for relief relate back to the breach of contract and involve Mausolf acting on behalf of Phoenix Wireless. Thus, as it would be inequitable for this Court to exercise specific jurisdiction over him, the fiduciary shield doctrine applies to Mausolf.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants Phoenix Accessories, Inc., and Dave Mausolf's Motion to Dismiss (#6) is GRANTED.

Dated: June 12, 2008.

_____
ROGER L. HUNT
Chief United States District Judge

9

AO 72
(Rev. 8/82)